THE PEOPLE, RESPONDENTS, *v.* EDWARD MAXON AND CHARLES STONE, APPELLANTS.

CRIMINAL LAW JURISDICTION—JUSTICES' COURTS—LEGISLATIVE POWER.—The legislature has no power, under the organic act, to authorize a justice of the peace to try a criminal case in which the fine or penalty exceeds, or may exceed, one hundred dollars.

IDEM—DISTRICT COURTS.—In cases of prosecution for misdemeanors, where the fine or penalty does not exceed one hundred dollars, the district courts and justices' courts have concurrent jurisdiction.

TRESPASS—PUBLIC LANDS.—It is no defense to an action or prosecution for trespass committed upon public land, that such land is the property of the United States.

APPEAL from the second judicial district, Ada county.

*J. R. McBride and Joseph Miller*, for the appellants.

*H. E. Prickett, district attorney*, for the respondents.

Opinion by KELLY, J.; NOGGLE, C. J., concurring. LEWIS, J., dissented.

At the November term of the district court for the second judicial district, Ada county, the defendants were indicted for malicious mischief in cutting, tearing down, and destroying a certain gate, the property of one Robie & Rossi. To this indictment the defendants interposed their demurrer to the jurisdiction of the court, on the ground that the offense charged in the indictment is within the exclusive jurisdiction of the justices of the peace. The demurrer was overruled, and the defendants tried and convicted, and a motion in arrest of judgment having been overruled, and judgment having been pronounced, the defendants appeal to this court for its decision.

It is contended by appellants' counsel that the six hundred and thirty-fifth section of the civil practice act, defining the jurisdiction of justices of the peace, confers jurisdiction over all offenses punishable by fine not exceeding five hundred dollars or imprisonment not exceeding six months, or by both such fine and imprisonment; that section 144 of the act defining crimes and punishments, under which this offense is charged, imposes a fine not exceeding

two hundred dollars and six months' imprisonment in the
county jail, or both; and for this reason the offense charged
in the indictment is within the exclusive jurisdiction of a
justice of the peace, and is not indictable, and can not be
tried in the district court.  The appellants' counsel admit
that the organic act of our territory limits the jurisdiction
of justices of the peace to one hundred dollars in civil ac-
tions; but, on the other hand, they contend there is no lim-
itation in criminal actions, except such limitations as the
legislature shall prescribe.

That part of section 9 of the organic act, which refers
to the jurisdiction of the several courts of the territory,
reads as follows: "The jurisdiction of the several courts
herein provided for, both appellate and original, and that
of the probate courts and of justices of the peace, shall
be limited by law; *provided,* that justices of the peace shall
not have jurisdiction of any matter in controversy when the
title or boundaries of law may be in dispute, or when the
debt or sum claimed shall exceed one hundred dollars; and
the supreme and said district courts, respectively, shall pos-
sess chancery as well as common law jurisdiction."

It is so well understood and so generally conceded that
the organic act takes the place of, and performs the office
of a constitution for a territory, we shall not make any
argument in support of this question.  Taking it, as ad-
mitted, that the organic act is the constitution of our ter-
ritory, subject to such alterations as congress may, from
time to time, provide, the question addresses itself with
more force to the judiciary than ordinary legislative acts;
and we are to apply those rules applicable to the construc-
tion of constitutional questions.  Statutes prescribe minute
directions for those affected by them, and can and do enter
into the details of our daily transactions.  Constitutions go
but little beyond the enunciation of general principles, and
it would be an absurdity to apply to a declaration of prin-
ciples the same rules of construction that are proper in re-
gard to an enactment of details.

In regard to a statute, the general duty of the judge is
that of a subordinate power to ascertain and to obey the

will of a superior.   In regard to a constitution, his functions are those of a co-ordinate authority, to ascertain the spirit of the fundamental law, and so to carry it out as to avoid a sacrifice of those interests which it is designed to protect.   No absolute rules can be framed for the interpretation of constitutions; nor can we adhere to the written letter of the constitution, because any such system would render constitutions practically intolerable; and, on the contrary, a loose and careless interpretation would be attended with serious danger.

With the application of these general principles we will endeavor to consider what power was conferred upon justices of the peace under the constitution or organic act of the territory, and whether the acts of the legislature giving jurisdiction to the extent of five hundred dollars in criminal cases are incompatible with said organic act.

It is contended by counsel for appellants, that the proviso in section 9 of the organic act, restraining the jurisdiction of justices of the peace, has no general significance, and must be limited to civil jurisdiction, because the words, "debt or sum claimed shall not exceed one hundred dollars," can not refer to a fine in criminal cases; and the preceding words of the act, "the jurisdiction of the several courts herein provided for, appellate and original, and that of the probate court, and justices of the peace, shall be limited by law," authorize the legislature to fix the limit or jurisdiction of justices of the peace in criminal cases without reference to the provisions of the organic act; and the limit of five hundred dollars, fixed by the legislature, or any amount the legislature might see proper to fix, can not be in conflict with the provisions of the organic act.

Judge McBride, our former Chief Justice, in the case of *Landon* v. *Bartley*, in the second judicial district, October term, 1865, reported in Cummins' Supreme Court Reports, p. 219, has made an elaborate argument upon the jurisdiction of the several courts of this territory, including those of justices of the peace, and I think his law is well grounded, and ought to govern this case.   That case was a question of jurisdiction of the probate courts, but in the argument the

jurisdiction of justices of the peace is so well defined I shall take the liberty to borrow the main portion of his argument. Justice McBride says: "The entire territorial organization is the creation of congressional legislation. To say that its creation, the territorial legislature, can not be governed, controlled, and limited by the authority which created it, is to assume that the creature is superior to the creating power. It is sufficient to say that Congress has always assumed to govern the territories; and its authority has been frequently affirmed by every department of the government; and as it is the source of our entire system of government in the territories, it would be pulling down the very foundation beneath us to question it."

Speaking of probate powers, Judge McBride says: "If the legislature can confer probate jurisdiction upon those courts, then they may confer probate power upon justices of the peace; and if common law and chancery jurisdiction may be distributed among these various courts, as the argument insists, then we may have a justice of the peace performing the functions of an English chancellor. For while the inhibition of the organic act declares that justice's courts shall not have cognizance of cases involving the title of boundaries of lands, nor of cases where the sum demanded exceeds one hundred dollars, this would still leave the most delicate and important equity cases, and an unlimited criminal jurisdiction within the limits of justice's courts. * * * The various courts provided in the organic act of this territory were known to the jurisprudence of America as distinct classes of courts, having each its general powers and duties, and were constituted with reference to a complete judicial system for the people of the territories, and the jurisdiction of each was intended to be confined and expressed in the known meaning and legal names of each."

When an American lawyer speaks of a "district court" the general jurisdiction of that court is at once suggested to the mind. When one speaks of a "probate court" its office and powers have a different meaning; and courts of justices of the peace the same. I assume, therefore, that by

the organic act each of the courts named was invested with peculiar jurisdiction pertaining to each, *pro re nata*, and while it was made the duty of the territorial legislature to define by law the bounds of that jurisdiction, and while in some instances, as in the probate and justices' courts, they might limit the jurisdiction, it could confer none on any of these courts. Who would contend that an act empowering a justice of the peace to impanel a grand jury, and to try and punish capital offenses, would be valid? I apprehend no one. And yet if the territorial legislature can confer a jurisdiction upon the probate court which is not inherent in it, but which turns it into a court of common law, it can equally authorize a magistrate to try a felon, and execute the condemned criminal. But we are met by the suggestion that the organic act declares that the jurisdiction of these various courts " shall be limited by law;" and we are asked if the jurisdiction is confirmed by the organic act, why these provisions? The answer is twofold, and I think convincing. Those who contend in opposition to the views I am advancing, assume that the words "limited by law" mean the same as prescribed by law, and here is a fatal error. The legislature may limit the jurisdiction of these courts, *i. e.*, their substantive existing jurisdiction, but they can invest them with none. It may contract their powers by transferring those which pertain to the higher courts, but it can in no case confer an additional jurisdiction, and this is evident from the declaratory sentence following the authority to limit, "that the supreme and district courts shall have chancery and common law jurisdiction; thus retaining to them the plenary power inherent in them, and protecting them from any emasculation." But it may be asked, if the supreme and district courts had the jurisdiction claimed by them, and are protected by the phrase above quoted from any attempt of the legislature to deprive them of their authority, why were they included in the sentence authorizing the legislature to limit their jurisdiction by law?

The words jurisdiction, both appellate and original, "shall be limited by law," simply apply to the regulations of the

appellate powers of these courts as between themselves and between them and the inferior courts. The legislature might limit the appellate powers of the supreme and district courts, and might limit the original jurisdiction of the probate and magistrates' courts.

Much stress was laid by counsel on the argument that when powers were conferred on a court and not made exclusive, they should be so construed. If the argument was to be applied to courts of the same or co-ordinate character, the claim would be just and the logic sound.

If we adopt the argument in theory and practice, it would destroy all the symmetry of our territorial judicial system. Instead of a judiciary, each branch of which has defined powers and duties, such as is intended by the organic act, we should have a confused jumble of judicial powers, distributed according to the whims or caprice of the legislative body in a new country, where system and method are proverbially disregarded, and temporary objects and ends constantly exercise a large control. By the interpretation for which I contend, we have given us by the organic act a judicial system not inferior to any within the Union; whereas, if the opposite construction is adopted, we should have no such thing as system, but the whole mass of judicial powers would be confusedly thrown into the various courts according to the supposed necessities of the time and in utter violation of every rational theory of law. It would seem to me that this argument is sufficiently applicable and ought to conclude the defendants in this case. The errors which judges are most likely to fall into in the interpretations of constitutional questions is in confounding constitutions with statutory enactments. The former deals in generalities and the latter in details. "A constitution does not and can not, from its nature, depend in any great degree upon mere verbal criticism or upon the import of single words." "The maxims which have found their way not only into judicial discussions but into the business of common life, as founded in common sense and common convenience, are applicable to the construction of constitutions."

By applying these rules to the language of the ninth section of the organic act, we shall not be at a loss in determining what powers were conferred upon justices of the peace. The jurisdiction was the mischief, and the organic act intended to fix the powers or bounds of jurisdiction. The only question then is, does the language of the organic act limit the jurisdiction in general terms, and was the jurisdiction the object of the act? for no construction in the interpretation of a constitutional power is to be allowed which plainly defeats or impairs its avowed objects. It is admitted by all that this provision of the act limits the jurisdiction of justices of the peace in civil cases, beyond the bounds of which the legislature can not go, but defendant's counsel contend the phraseology of the language upon a strict construction is applicable only to civil jurisdiction, and for that reason the criminal jurisdiction is in the discretion of the legislature. This is admitting a doubt in regard to a question upon which the legislature has acted. It is a well-settled principle of jurisprudence, that when there is a doubt of the constitutionality of any proposed legislative enactment, it should in any case be sufficient reason for refusing to legislate upon it, and if legislatures do not act upon this principle, the reasons upon which are based the judicial decisions sustaining legislation, will, in very many cases, cease to be in force.

In the case of *Armstrong* v. *Paul et al.*, 1 Nev., where the question of jurisdiction of justices of the peace arose upon a question of tort, and the justice had rendered judgment for over four thousand dollars, Judge Bronson says: " From the language of the act " (meaning the organic act of the territory) " there is no escape." The justice shall not have jurisdiction " when the debt or sum claimed shall exceed one hundred dollars." Can language be more explicit? There is no exception; it embraces all cases cognizable in justices' courts, whether they arise from contract or in tort. And upon reflection I am unable to see any good reason for the distinction claimed by counsel. Actions in tort are generally " more complex and difficult to dispose of than actions growing out of such contracts as usually come before a jus-

tice of the peace. And when the law limits the jurisdiction in the more simple action to a certain fixed amount, it would reasonably follow *a fortiori* that the law would equally limit it in the more complicated case."

It must be borne in mind, that there is a broad distinction between the power of the territorial government and that of the states. The former has no inherent power; it is simply one of delegated powers. In ascertaining the powers of the territorial legislature, we examine to see what powers are expressly granted, or are necessarily implied for their exercise. The legislatures of the states only examine to see what powers are denied by the federal and state constitutions. And the inherent power of the state legislature extends to any act not prohibited by the constitution, for, without and beyond their limitations and restrictions, they are as absolute and uncontrollable as the parliament of Great Britain. To say that the intent of the instrument must prevail, that its provisions are neither to be restricted into insignificance, nor extended to objects not comprehended in them nor contemplated by its framers, is repeating no more than we have already said. If in any case the plain meaning of a provision, not contradicted by any other provision in the same instrument, is to be disregarded because we could give a narrower legal interpretation to certain words, and thereby vary the natural and common import of the language, when the words bear upon the same subject-matter, it must be one in which the absurdity and injustice of applying the words used to the substantive matter, would be so monstrous that all mankind would without hesitation unite in rejecting the application.

Acts void in part and valid in part; whatever may be said in regard to rejecting the excessive limitation provided by the legislature of the territory, it is a well-settled rule of law, that an act may be void in part, by reason of its violation of a constitutional provision, and good as to the remainder.

"If any part of the act be unconstitutional," says the supreme court of the United States, "the provisions of that part may be disregarded, while full effect may be given to

such as are not repugnant to the constitution." So, when
the legislature of the territory extended the jurisdiction
of justices of the peace to five hundred dollars in criminal
cases, the lesser constituted jurisdiction was included in the
greater. And probably the jurisdiction, to the extent of one
hundred dollars, is complete without any special statute
upon the subject, though we would not deny but the legis-
ture might limit the jurisdiction to less than one hundred
dollars, if they saw proper to do so. We do not see, as
contended by counsel, any necessary conflict of jurisdiction
in the construction we have given. It is true there will be
a concurrent jurisdiction between justices' courts and the
district courts, when the fine or penalty is less than one
hundred dollars. And it is absolutely necessary, for the
better administration of justice, that this concurrent juris-
diction should exist.

All public offenses prosecuted in the district court must
be prosecuted by indictment, except when the proceedings
are had for the removal of district, county, or township offi-
cers. (See Idaho Stat. Crim. Prac., secs. 173, 174.)

Every public offense, not a felony, is a misdemeanor.
(Crim. Practice, secs. 2, 3, 4.)

Misdemeanors of petty grades are punishable in justices'
courts without indictment. Misdemeanors of higher grades
are subjects of indictment and punishable by a fine superior
and above the jurisdiction of justices of the peace. But
who can tell the grade of punishment until the examination
of witnesses? Suppose the justice commence the examina-
tion, and the evidence discloses a petty offense, then he ought
to give the defendant a trial and pronounce a judgment of
imprisonment, or fine, or both, within the limits of his juris-
diction. But suppose the evidence discloses an aggravated
offense, where the judgment would exceed his jurisdiction,
then the defendant should be bound over to answer any in-
dictment that might be found against him. Suppose, on the
other hand, the defendant should be indicted, and it should
turn out on a full trial that the punishment should not ex-
ceed that punishment which a justice of the peace might
have imposed. Should the district court suspend its judg-

ment and send the defendant back to a justice's court for another trial, merely for the purpose of having a judgment rendered against him? We think the wisdom of the law in regard to this concurrent jurisdiction is plainly demonstrable. In fact, no better provision could be made. This concurrent jurisdiction in regard to minor offenses forms a harmonious system of criminal jurisprudence and lends itself to speedy and impartial justice.

The second and last ground of error is to the instruction to the jury. It appears that the malicious mischief was in the destruction of property of one Robie & Rossi, located on the public lands of the United States; and the court instructed the jury that Robie & Rossi were the owners of the property against all the world except the United States.

We can not see how the latent authority of the United States to set up its title to the public lands in our territory could be made a defense to a criminal action. Only two or three years ago every species of property in our territory was in the same condition, and a very small portion is owned in fee simple or in any other way at the present time. To say that every trespass, or civil action, could not be maintained for injury or conversion of this species of property because the United States might assert its title is certainly against reason and law.

In the case of *Winchester* v. *Shrewsburgh*, 2 Scam. 283, where the plaintiff made rails from timber growing on government land, and left them piled up on the land, and defendant afterward purchased the land of the government and converted the rails to his own use, it is held "that the rails did not pass with the land, and the plaintiff could maintain an action of trespass against the defendant and recover the value of the rails taken."

In *Rogan* v. *Perry*, 6 Wis. 194, it is held "that any person cutting and cording up wood upon the unoccupied lands of another, that of itself is sufficient *prima facie* to enable him to maintain an action of trespass against the defendant, who took it and carried it away."

With these reasons we conclude that the rulings of the

court below were correct, and that judgment must therefore be affirmed.

Judgment affirmed.

### ON PETITION FOR A REHEARING.

NOGGLE, C. J., delivered the opinion.

In this case the opinion of the supreme court, affirming the judgment of the district court, was delivered by Justice Kelly on the twenty-sixth day of January, 1870. Afterwards and during the same term of the supreme court, the appellants filed their petition for a re-argument. In the said petition of the appellants no reasons are given, or authorities referred to, other than those already considered and passed upon by the court. The petition, therefore, offers no ground for a change in the judgment of the court, or for granting a re-argument.

The history of the case sufficiently appears in the opinion of the court delivered as aforesaid. We may have great respect for decisions of the supreme courts of other states in deciding cases similar in principle, and particularly California, because our laws are generally copies of laws of that state. The laws of California are founded upon the constitution of that state; our laws are founded upon our constitution, the organic act. California never had an organic act. That state never had a territorial organization under any such act. Ohio, Indiana, Illinois, Michigan, Wisconsin, Iowa, Minnesota, and many other territories have been organized under organic acts like ours, and not one of the territories of the United States excepting Nevada ever attempted to confer upon justices of the peace greater jurisdiction in criminal than in civil matters, and the opinion of Justice Brosnan, of the supreme court of Nevada, indicates the respect of that court for the law.

We see no reason why the court should not adhere to the decision made in the case upon the first hearing. From the time the organic act took effect or went into operation, the district courts were, and still are courts of general jurisdiction, with power and authority sufficient to try, convict, and punish felonies and misdemeanors. Among other things,

it is provided in section 9 of said organic act, that "the jurisdiction of the several courts herein provided for, both appellate and original, and that of the probate courts and of justices of the peace, shall be limited by law. Provided, That justices of the peace shall not have jurisdiction of any matter in controversy when the title or boundaries of land may be in dispute, or where the debt or sum claimed shall exceed one hundred dollars; and the said supreme and district courts, respectively, shall possess chancery as well as common law jurisdiction."

We understand the organic act to be the fundamental law of the territory, within the spirit and meaning of which the legislative power must keep, and beyond which the territorial law-making power can not legally go. Under said section 9 the legislature might take from the district courts so much of their original common law jurisdiction, in criminal as well as civil cases, as it thought proper, and give such jurisdiction to justices of the peace. "Provided, That justices of the peace shall not have jurisdiction of any matter in controversy when the title or boundaries of land may be in dispute, or where the debt or sum claimed shall exceed one hundred dollars."

In section 633 of the laws of the second session, on page 196, the legislature have attempted to limit the jurisdiction of justices of the peace in ten different cases, providing carefully in each case that the sum or damages claimed shall not exceed one hundred dollars.

In this section the legislature have attempted, in violation of the organic act, to confer upon justices of the peace equity powers, by providing "for the foreclosure of any mortgage, or the enforcement of any lien on real or personal property, when the debt secured does not exceed one hundred dollars."

No one will attempt to argue that this is not an assumption of power attempted to be conferred by the legislature upon justices of the peace, expressly prohibited by the organic law. This leads to a more careful examination of the six hundred and thirty-fifth section of this law, which confers criminal jurisdiction upon justices of the peace.

By this law, we find justices of the peace authorized to hold courts for the trial of misdemeanors, punishable by fines not exceeding five hundred dollars.

Did congress intend to allow the legislature to confer upon justices of the peace criminal jurisdiction? and, if it did, was it the intention of congress that it should limit their jurisdiction in criminal as in civil cases?

It is frankly admitted by counsel upon the argument, that the first part of the paragraph of section 9 of the organic law, preceeding the "proviso," has reference to criminal as well as civil cases, and although the only office that the "proviso" in this case can perform, under any known rules of construction, is to qualify that part of the paragraph preceeding the "proviso," still the counsel for the defendants insist that all that part of the paragraph following the "proviso," refers only to civil cases, notwithstanding no such language is used.

In every proceeding in court against a criminal, when by law a fine may be imposed for any amount, no matter whether that amount be great or small, the extent of the amount of fine that may be imposed. may be properly construed to be the sum in law claimed by the prosecution, and when the law imposes a fine exceeding one hundred dollars, jurisdiction can not be conferred upon a justice of the peace in such a case.

Section 9 of the organic law either thus restricts the legislature or it entirely fails to confer upon the law-making power the right to pass any law, conferring, limiting, or fixing the jurisdiction of justices of the peace in criminal cases. If that portion of section 9 of the organic law following the "proviso" has no reference to criminal offenses, by what rule of construction can we understand that all that portion of the paragraph that precedes the "proviso" refers to criminal as well as civil matters.

It seems so clear that there can scarcely be room for a doubt that if that which follows the "proviso" refers only to civil matters, that which precedes it must do the same and can do no more. If such is the case and it refers only to civil matters, then the legislature did not possess the

power to confer upon justices of the peace any jurisdiction to hear, try, and determine criminal matters, and that being so, there can no longer be a doubt that the district court still retains and may entertain original jurisdiction in all misdemeanors as well as felonies. Such would be a strict construction of the act.

The organic law places no more direct restriction upon the legislature in limiting the jurisdiction of probate courts. In the case of *Landon* v. *Bartly*, tried in Boise county, before Chief Justice McBride at the October term, 1865, as may be seen by referring to 1 Idaho reports, 219, by Cummins, the court unhesitatingly declared the act of the legislation conferring civil and criminal jurisdiction upon probate courts, unauthorized, null, and void, and for such reasons as do most fully sustain the doctrines contended for in the opinion of the court in this case.

We are told that common law offenses do not exist against the general government; this is true, and we do not see how it could be claimed otherwise. Legal gentlemen understand that our United States district and circuit courts are courts of limited jurisdiction, and do not in any general sense possess common law jurisdiction.

The case at bar is not pending in a United States court; but it is pending in a territorial court, established by act of congress, and the offense charged in the indictment is made a misdemeanor at common law, and also by the statute law of the territory, and no such offense is created or known under the laws of the United States. The case was commenced and tried in a court of general jurisdiction, original and unlimited, like the state, district, or circuit courts of a state in the union. It is true that the organic act provides, that "each of the said district courts shall have and exercise the same jurisdiction in all cases arising under the constitution and laws of the United States as is vested in the circuit and district courts of the United States." This does not change the name of the district court of the territory; it is a mere addition to the powers of that court, without affecting its organization. As these questions are not in this case, it is unnecessary to comment further upon them.

The district courts of Idaho territory having been created as common law courts by the organic law, when fully organized for the transaction of legal business, were then courts of record, possessing general and unlimited criminal as well as civil jurisdiction; then they had the power to cause to be apprehended, to try, convict, and punish any offender guilty of felony or of a misdemeanor of the first class *mala in se,* or penal at common law.

Misdemeanors are divided into two classes: 1. Such as are *mala in se,* or penal at the common law; 2. Such as are *mala prohibita,* or penal by statute. (1 Whart. Am. Crim. L. 2.)

"Whatever mischievously affects the person or property of another, or openly outrages decency, or disturbs public order, or is injurious to public morals, or is a breach of official duty, when done corruptly, is the subject of indictment and belongs to the first class of misdemeanors, *mala in se,* or penal at common law." (1 Whart. Crim. L. 2.)

On page 3 of the same book, Wharton says: "The consequence was that whenever a wrong was committed, which, if statutory remedies alone were pursued, would have been unpunished, the analogies of the common law were extended to it, and it was adjudged, if the reason of the case required it, an offense to which the common law penalties reached."

Punishment of offenses at common law were just as complete before there was any statute of punishment enacted, as afterwards. We may repeat that the books in which the law should be found are greatly at fault, or misdemeanors of the first class, "penal at common law," may still be punished at the common law; notwithstanding a statute may have been enacted providing for a different punishment of the same offense, unless the legislative act clearly and explicitly takes away the right of trial at common law, or from common law courts, by positive enactment within the constitutional authority of such legislature, the common law power of the court can not be destroyed by mere implication.

The errors contended for in this case consist in a failure to understand the distinction between the two classes of mis-

demeanors; of those penal at common law, and those penal by statute; "wherever a statute creates an offense and expressly provides a punishment, the statutory provisions, as will be seen more fully hereafter, must be followed strictly and expressly." * * * "Where a statute attaches a new penalty to that which was an offense at common law, either the remedy by statute or that at common law can be pursued." * * * "And if the statute specify a mode of proceeding different from that by indictment, then if the matter were already an indictable offense at common law, and the statute introduced merely a different mode of prosecution and punishment, the remedy is cumulative, and the prosecutor has still the option of proceeding by indictment at common law, or by the mode pointed out by statute." (1 Whart. Am. Crim. L. 10.)

This is clearly so, unless by direct and positive enactment the jurisdiction has been taken from the common law court which has not been done in Idaho territory. The first chapter of Sedgwick on statutory and constitutional law, from page 1 to 25, and the first chapter of Wharton's American criminal law from page 1 to 13, afford much valuable authority in support of the foregoing propositions.

Unless the organic act confers upon the legislature the power to give justices of the peace criminal jurisdiction to hear, try, determine, and punish crimes and misdemeanors, then clearly it is not in the power of the legislature to confer upon justices of the peace any such jurisdiction. If the organic act does not clearly and explicitly give the legislature the power to confer such jurisdiction, then a justice of the peace, in criminal matters, is a mere peace officer and an officer for the examination of offenses, for the purpose of holding offenders to bail, etc., and has no right or power to hear, try, or determine any criminal matter whatever, and all laws, assuming to confer upon justices of the peace such jurisdiction are without authority and void, and can have no force and effect. Admitting, however, that the law which attempts to confer jurisdiction upon justices of the peace in such cases as this is a valid and binding law, still the prosecution would be at liberty to proceed in either

court, unless the jurisdiction is taken from the district court by a direct and positive law, and until such a law is passed the jurisdiction of the two courts in such matters is concurrent.

While we are told in this case that the provisions of the statute must be strictly followed, we are also referred to page 405 of Sedgwick on Statutory and Constitutional Law in support of the declaration aforesaid. We are unable to so understand the law from this authority. On this page (405) Sedgwick says: "The analogy of these rules holds good in the criminal law. Thus when an offense intended to be guarded against by statute, is punishable before the making of any statute prescribing a particular method of punishment, then such particular remedy is merely cumulative, and does not take away the former remedy." The offense charged in this indictment being a case of mischievously destroying the property of Robie and Rossi, it was a misdemeanor of the first class, penal at the common law, *mala in se,* and it is not a misdemeanor of the second class penal by statute, *mala prohibita;* therefore the reference can not strengthen the defendants' case, but clearly sustains our decision.

Misdemeanors of petty grades are punishable in justices' courts; misdemeanors of higher grades are subject to indictment, and punishable by fine above the jurisdiction of justices of the peace. Suppose we adopt the defendants' theory that all misdemeanors are punishable by fine, etc., not exceeding five hundred dollars, and therefore not indictable; can the justices punish by a large fine? Are there no greater misdemeanors? If we are not mistaken there are several punishable by larger fines. Section 101, on page 496 of the first session laws, names an offense punishable by fine in the sum of two thousand dollars. Section 13, on page 49 of the fourth session laws, names a crime punishable by a fine not exceeding one thousand dollars, and so we might extend the reference, but sufficient has been noticed to show that there are offenses known as misdemeanors that can only be tried in the district court after

first having been indicted, because of a punishment by a fine larger than five hundred dollars.

Our organic act is in substance like the acts for the organization of all the other territories. The same provisions and the same "proviso" that is in section 9 of our act is substantially the same in each of the acts organizing all other territories since the organization of the north-west territory. The language of each being substantially like section 9 of our act. The legislatures of all the territories in limiting the jurisdiction of justices have, with a single exception, construed such provision in their organic acts as a restriction in criminal as well as civil cases, and so far as reference has been made in the argument on the part of the defendants, appellants, it is not contended that any of the territories heretofore organized under a similar law, with the exception aforesaid, has ever undertaken to confer upon justices of the peace greater jurisdiction in criminal than in civil matters.

If this power, under the language of the act, was even doubtful, it has been so long and so uniformly adopted and acquiesced in, that it has become a law settled and approved by usage and custom. It is now rather late to declare, that the organic law has no reference to criminal matters, and therefore the legislature may, without regard to any law of congress, confer upon justices of the peace, in criminal matters, any jurisdiction thought proper. In other words, is it of less importance—does it require less experience, or less legal ability, to conduct the trial of an offender charged with crime that may be punished by a fine of one hundred dollars, than it does to adjudicate books of accounts, a promissory note, or any other civil demand of one hundred dollars? Or, are criminal matters and criminal prosecutions more important to both the people and the offender, and are they generally more complex and difficult to dispose of, than actions growing out of such contracts as usually come before a justice of the peace? These are questions of legal importance to the law-abiding citizens of this territory, and they have a right to have them fairly and candidly answered by the court. In the language of Justice

Brosnan, in delivering the opinion of the supreme court of Nevada (1 Nev. 141), this court may answer these important questions of jurisdiction by saying, that "when the law limits the jurisdiction in the more simple action to a certain fixed amount, it would reasonably follow *a fortiori*, that the law would equally limit it in the most complicated case.

It is hardly fair to assume for the purpose of sustaining the law, that the legislature were actuated or induced to enact the law because money was so abundant in this territory that in the opinion of the legislature a fine of five hundred dollars is not more, proportionally, in Idaho, than a fine of one hundred dollars in an eastern state or territory. We do not think the legislature was actuated by any such motives. Mistakes are neither criminal nor uncommon, and it is certainly more charitable to believe that the law is the result of an innocent and thoughtless mistake than to believe that a legislature selected by the intelligent people of Idaho could make so great a mistake as to intentionally enact that the abundance or scarcity of money could affect a criminal case, while by the same law they declare in effect that it shall not affect a civil case. Our confidence in the intelligence of the legislature that enacted the law will not permit us to conclude that its members labored under the impression that it did not require just as much money to pay a fine of one hundred dollars, and as much experience and ability to adjudicate it, as a civil demand for the same amount.

As to the remaining point in the case, it may be passed without saying more than has already been said in the opinion of the court in this case. Until some authority can be found sustaining the views of the defendants, appellants, and being confident that none can be found, and that none such exists, and believing that the cases before referred to in the opinion of the court are a complete answer to the positions taken by the defendants, appellants, further comment is omitted.

We are therefore of the opinion that the rehearing be denied, and that the judgment of the district court be

affirmed at the costs of the defendants in this court, and that the district court be by the order of this court directed to execute the judgment and sentence of that court pronounced at the last term thereof.